**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANGELA SHEPHARD and ANNA BURZAWA, Illinois residents, individually and as representatives of a class of similarly situated persons, | ) | |
| Plaintiffs, | ) | Case No. 24-cv-07698 |
| v. | ) | |
| YARDI SYSTEMS INC., a California corporation, | ) | |
| Defendant. | ) | |

**DEFENDANT YARDI SYSTEMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..... 3

- A. Yardi's PropertyShark Platform Compiles Publicly Available Property Information ..... 3
- B. Yardi Lists Plaintiffs' Publicly Available Information in PropertyShark and Never Used their Names to Promote Anything ..... 3
- C. Plaintiffs' Attorneys Manufactured This Lawsuit By Soliciting Plaintiffs and Accessing Their Information ..... 4
- D. Plaintiffs Sued Yardi Under a Misunderstanding of the Facts ..... 5

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 7

- A. Yardi Did Not Use Plaintiffs' Identities for a Commercial Purpose ..... 7
- B. Plaintiffs' Application of IRPA Violates the First Amendment ..... 9
  1. Yardi's Property Reports Are Constitutionally Protected Non-Commercial Speech ..... 9
  2. Plaintiffs' Interpretation of IRPA Fails Strict Scrutiny ..... 11
  3. Plaintiffs' Interpretation of IRPA Also Fails Intermediate Scrutiny ..... 12
- C. Plaintiffs' Claims Were Filed Outside the 1-Year Statute of Limitations ..... 13

V. CONCLUSION ..... 15

## I. INTRODUCTION

The Illinois Right of Publicity Act (IRPA) prohibits using someone's identity to sell or advertise goods or services without consent. The legislature passed IRPA—half-jokingly called the "Michael Jordan Law"—to protect citizens from businesses using their identities for endorsements without permission. *See* 90th Ill. Gen. Assem., House Proceedings, May 21, 1998, at 7–8. The law prohibits, for example, a restaurant claiming that the Speaker of the House endorsed their cheeseburgers or a company from using a legislator's likeness for a "hair tonic" ad without permission. *Id.* (legislative examples of what the law prohibits). IRPA makes good sense with those examples in mind.

But that's not what this case is about. Plaintiffs' IRPA claim stems from Yardi's inclusion of already public information, like names and property addresses, in Yardi's PropertyShark database. But Plaintiffs do not assert that inclusion of that information itself violates IRPA. Instead, they contend Yardi violated the law because someone *could have* tested the product by viewing a free PropertyShark report that contained their already publicly available information and then been enticed to purchase a PropertyShark subscription. That's their theory of how Yardi allegedly "used" their "identities" to "advertise" the PropertyShark platform. The Court should reject Plaintiffs' lawyer-driven attempt to expand IRPA beyond its text, intended scope, and precedent, and grant Yardi summary judgment.

Plaintiffs' claims fail first because Yardi's conduct here is not actionable under IRPA. Yardi didn't "publicly use" or "hold out" Plaintiffs' identities for "commercial purpose," as IRPA requires. Yardi never put Plaintiffs' property reports on a billboard or ads saying, "subscribe to get more reports like Shephard's." Nor did Yardi ever suggest Plaintiffs endorsed PropertyShark or anything else. Yardi simply allows users to test its product by viewing a single, free property report containing public information for the property the user selects. Adopting Plaintiffs' tortured

interpretation of IRPA would impose liability on any company that offers trial subscriptions—like Westlaw and LexisNexis—if the trial user elects to do a search that displays an individual's name. That makes no sense. The names displayed in those trials are part of the product, not an advertisement.

Nor did Yardi "hold out" Plaintiffs' information to anyone. Apart from Plaintiffs' lawyers' litigation consultants, *nobody has ever even viewed information about Plaintiffs' properties on PropertyShark*. Two courts granted summary judgment to defendants on IRPA claims for this reason within this past year, concluding there's no "holding out" of a plaintiff's identity when it had only been viewed by the plaintiff or her attorneys. Any other result would allow plaintiffs to manufacture their own injuries to create claims, as counsel attempted to do here.

Second, Plaintiffs' claim fails because their proposed application of IRPA violates the First Amendment. Courts routinely recognize that modern online directories (the white pages, IMDb, and so on) contain non-commercial, protected speech. PropertyShark's free property reports are no different, so Plaintiffs' interpretation of IRPA must pass strict scrutiny. It fails that test, of course. Illinois, for example, has no "compelling" interest in prohibiting speech that's already been made public *by Cook County*. For similar reasons, even if a lower standard of review applied, Plaintiffs' application would also fail intermediate scrutiny. While this is yet another reason to grant summary judgment, the Court should interpret the statute logically and narrowly to avoid reaching this constitutional question unnecessarily.

Third, Plaintiffs' claims are time-barred under the law's one-year statute of limitations. That's because their names—the only information contained on the PropertyShark platform deemed part of one's "identity" which could arguably be construed to fall under IRPA—were available through PropertyShark well over a year before Plaintiffs filed suit. Multiple courts in this district have granted summary judgment on this ground in recent years.

The Court should grant summary judgment for Yardi.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Yardi's PropertyShark Platform Compiles Publicly Available Property Information

Yardi owns and operates PropertyShark, a property-research website that offers information about commercial and residential properties. Statement of Undisputed Material Facts (SUMF) ¶ 1. To search for property information, visitors must first register for a free account. *Id.* ¶ 5. They can then search for "Properties" or "Owners" to access public property information, like so:




*Id.* Users can then test PropertyShark by accessing one free "property report," which contains already public information like an owner's name, address, purchase date, price, and property tax details. *Id.* ¶ 6. These property reports are not created and stored in the database in advance. *Id.* ¶ 8. They are generated in response to a user's property selection, pulling information directly from PropertyShark or third-party sources in real time. *Id.* Once users access one property report, they cannot obtain more unless they subscribe. *Id.* ¶ 9.

### B. Yardi Lists Plaintiffs' Publicly Available Information in PropertyShark and Never Used their Names to Promote Anything

Plaintiff Shephard and Burzawa's names and status as the respective owners of the properties located at 20081 Tam Oshanter CT and 5608 N. Mango Ave first entered the PropertyShark database on May 13, 2023 and December 3, 2021, respectively. *Id.* ¶¶ 10, 14. PropertyShark obtained that information from Cook County, Illinois' public records. *Id.* ¶¶ 11, 15. Just like if someone searched those

public records, anyone who queried PropertyShark for "Angela Shephard," "Anna Burzawa," or their addresses and generated a property report for the applicable address would be able to see them as the owner. *Id.* ¶¶ 12, 16. The Plaintiffs' names and affiliations with their properties never changed from the date they were uploaded to the PropertyShark website through the filing of this lawsuit.[1] *Id.* ¶¶ 12, 16.

Yardi has never advertised or promoted either Plaintiff's property reports (*e.g.*, on a billboard that says, "You can get more property reports like this if you subscribe"). *Id.* ¶ *20*. PropertyShark users could query Plaintiffs' names or property addresses for information about their properties and associated neighborhoods, but Yardi never encouraged anybody to do so by, for example, sending emails that invited users to "see where Anna Burzawa lives." *Id.* Nor did it invite users to purchase subscriptions by saying they could "learn more about Angela Shephard" if they did so. *Id.* Indeed, unlike many companies that offer a "teaser" of its product and then more functionalities only after purchase, a user could access all the information about any one property in the trial report.

### C. Plaintiffs' Attorneys Manufactured This Lawsuit By Soliciting Plaintiffs and Accessing Their Information

Neither Plaintiff had heard of PropertyShark when they saw the following Facebook advertisement by Don Bivens PLLC between March and May 2024:




*Id.* ¶¶ 21, 23.

---

[1]Although neither Plaintiff requested it do so, Yardi suppressed both Plaintiffs' names in its database as a courtesy during the pendency of this lawsuit even though that information remains publicly available through county websites. *See* SUMF ¶¶ 13, 17.

After each Plaintiff submitted their information in response to this ad, [redacted]—a paid litigation consultant for Bivens and Plaintiffs' counsel Anderson + Wanca ("A+W")—had one of its employees create a PropertyShark account in the fictitious name of "Tom Brown" using the email address pillows4ucom@gmail.com. *Id.* ¶¶ 25-27. [redacted] then obtained the following property reports for each Plaintiff's property and provided them to Bivens and A+W for this lawsuit.

[redacted]

*Id.*

**D. Plaintiffs Sued Yardi Under a Misunderstanding of the Facts**

A+W then filed a putative class action for Plaintiffs, alleging Yardi violated IRPA. *Id.* ¶ 32. Plaintiffs' Complaint doesn't take issue with Yardi's inclusion of their publicly available property information on the PropertyShark platform. *Id.* ¶ 33. They instead allege Yardi violated IRPA solely because someone *could have* viewed their property information and subsequently purchased a subscription. *Id.* ¶ 34.

But that was just what their lawyers put in their Complaints. Plaintiffs' depositions revealed what their actual gripes were, and that those gripes were both factually wrong and premised on a misunderstanding of how PropertyShark works.

Burzawa received calls about selling her property and believed those callers acquired her phone number from PropertyShark. *Id.* ¶ 35. But her phone number has

never appeared on a property report or even been in PropertyShark's database. *Id.* ¶ 19.

Shephard, for her part, felt that PropertyShark violated her privacy because users who purchased a subscription could view additional information that wasn't listed in the free report. *Id.* ¶ 36. But that was wrong too. Subscribers can only see the same report and information as a free trial user; their subscription just gave them access to reports about other properties. *Id.* ¶ 6. Shephard also believed that PropertyShark shouldn't have displayed her home's purchase price, value, and property taxes. *Id.* ¶ 37. But all that information is publicly available on government websites anyway. *Id.* ¶ 18. And none of that information other than name even arguably implicates IRPA.

On top of that, both Plaintiffs believed many people obtained reports containing publicly available information about them from PropertyShark. *Id.* ¶ 38. That didn't happen either. The only person who accessed reports about them was "Tom Brown"—a pseudonym created by Plaintiffs' litigation consultants. *Id.* ¶¶ 28-31.

In sum, none of Plaintiffs' actual complaints had anything to do with the theory of liability their lawyers alleged in the Complaint (that their identity was used to sell subscriptions), those complaints were all factually incorrect, and the "injury" they allege is manufactured and illusory. Yardi now moves for summary judgment.

## III. LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024). Speculation cannot overcome a summary

judgment motion. *Daugherty v. Harrington*, 906 F.3d 606, 611 (7th Cir. 2018).

## IV. ARGUMENT

### A. Yardi Did Not Use Plaintiffs' Identities for a Commercial Purpose

To start, Yardi's conduct isn't regulated by IRPA because Yardi never used or publicly held out Plaintiffs' identities for commercial purposes.

IRPA prohibits the unauthorized use of an individual's "identity" for "commercial purposes." 765 ILCS 1075/30. "Identity" includes the photograph, image, likeness, and name of an individual. 765 ILCS 1075/5. An identity is only used for a "commercial purpose" where there is "public use" or "holding out" of such information "in connection with the offering for sale," or advertisement of a product or service. 765 ILCS 1075/5. "[P]ublic use" means that "some substantial number of people saw or were exposed to a person's identity," whereas "holding out" means "the representation . . . of an individual's identity on or in connection with certain activities." *Hoffower v. Seamless Contacts Inc.*, 736 F. Supp. 3d 605, 615 (N.D. Ill. 2024) (cleaned up).

Yardi didn't "publicly use" or "hold out" Plaintiffs' identities. There was no public use because a substantial number of people didn't see Plaintiffs' property information. Only their litigation consultant acting on Plaintiffs' behalf did, and that's not enough. *See, e.g.*, *Trannel v. Prairie Ridge Media, Inc.*, 370 Ill. Dec. 157, 987 N.E.2d 923 (Ill. App. 2013) (no public use where only 31 people in a county of 300,000 saw plaintiff's photo).

Yardi didn't "hold out" Plaintiffs' information either. For one, Plaintiffs must do more than assert that their "name[s] and other information . . . appear on or within a product." *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1102 (7th Cir. 2022). They must establish that their identities "help[ed] sell something." *Id.* Here, Plaintiffs can't do so because Yardi didn't use *their names* to sell subscriptions or

reports by doing something like using their names on a billboard that said, "Get more property reports like Burzawa's or Shephard's." SUMF ¶ 20. Instead, Yardi offered a trial of their product so a user could see how it works,[2] and one piece of information amongst many included in that trial property report is a property owner's name. *Id.* ¶¶ 2-9. That's not enough to impose liability under IRPA.

Holding otherwise would impose crushing statutory penalties on any company that provides aggregated, publicly available data—but only if they offer free tests of their product, a nonsensical result. For example, Westlaw and Lexis (1) compile publicly available information, including names; (2) offer free trial subscriptions and then (3) charge for memberships. Even that would violate IRPA under Plaintiffs' theory. Cook County itself would violate IRPA under this theory, in fact, because it holds Plaintiffs' information out for free and then offers an option to purchase it. SUMF ¶ 39. But that cannot be the state of the law, and this Court shouldn't interpret statutes to the point of absurdity. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69 (1994) (rejecting defendant's version of the statute because it would lead to "positively absurd" results).

Setting these points aside, IRPA doesn't permit "a plaintiff to obtain relief based on her own attorney making a direct request for, and then obtaining, the plaintiff's identifying information." *Hoffower*, 736 F. Supp. 3d at 615–16 (Kennelly, J.). Allowing that would "negate the statute's requirement that a violation consists of the *defendant's handling* of that information, specifically the 'use' or 'holding out' of it." *Id.* at 616; *see also Braundmeier v. Ancestry.Com Operations, Inc.*, __ F. Supp. 3d __, 2025 WL 327768, at *5 (N.D. Ill. Jan. 29, 2025) (Cummings, J.) (adopting same

[2] Yardi's conduct also doesn't violate IRPA because the free trial provides the same product a subscriber receives. The Court could grant Yardi summary judgment on this ground as well. *See Dobrowolski v. Intelius, Inc.*, 2018 WL 11185289 (N.D. Ill. May 21, 2018) (no violation of IRPA when a company offers a preview of the exact product it sells); *Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013) (same)

reasoning). It would also permit Plaintiffs to manufacture their own "injury" and then sue about it. So here, Plaintiffs' claim fails for the additional reason that no one other than their attorneys' consultants ever accessed their information. SUMF ¶¶ 28-31. Their claims do not stem from *Yardi* holding out their information, but rather their attorneys intentionally seeking it out to manufacture a claim.

In sum, Yardi's PropertyShark database isn't what IRPA was designed to regulate, and this Court shouldn't be the first to extend the statute's scope to impose liability for this type of lawyer-created "injury."

### B. Plaintiffs' Application of IRPA Violates the First Amendment

Even if Yardi's claims were subject to IRPA, Plaintiffs' application of the law here violates the First Amendment.

#### 1. Yardi's Property Reports Are Constitutionally Protected Non-Commercial Speech

The First Amendment "means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Department v. Mosley,* 408 U.S. 92, 95 (1972). The Supreme Court has distinguished between "commercial" and "non-commercial" speech and held that the latter receives a greater "degree of protection." *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 65 (1983). Only if speech proposes a commercial transaction and presents a "close question" do courts apply a three-part test to determine if it's non-commercial: whether "(1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516 (7th Cir. 2014) (summarizing *Bolger*).

Here, the free property reports are non-commercial speech that don't propose commercial transactions. They contain publicly available property information and serve only as an example, so they don't qualify as commercial speech subject to the *Bolger* test. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New*

*York*, 447 U.S. 557, 562 (1980) (defining commercial speech as speech that does "no more than propose a commercial transaction"); *Bolger*, 463 U.S. at 65 (same). Plaintiffs still labor to characterize the property reports as commercial advertisements because Yardi's alleged purpose in offering *free* property reports is to entice users to buy subscriptions to PropertyShark. SUMF ¶ 34. Even if true, that doesn't "propose a commercial transaction," and thus doesn't even invoke *Bolger*. *IMDb.com Inc. v. Becerra*, 962 F.3d 111, at 1122 (9th Cir. 2020) (declining to reach *Bolger* factors for this reason).

Nor is it a "close question." *Id.* To the contrary: Courts across the country have reached the same conclusion under similar circumstances. *See, e.g.*, *Vrdolyak v. AVVO, Inc.*, 206 F. Supp. 3d 1384, at 1389 (N.D. Ill. 2016); *see also Nieman v. VersusLaw, Inc.*, 512 Fed. App'x 635, 637 (7th Cir. 2013) ("The First Amendment privileges the publication of facts."); *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 957 (9th Cir. 2012) ( "telephone listings and community information contained in the [yellow pages] directory . . . constitute[s] noncommercial speech.").[3] In *Vrdolyak*, for example, the court dismissed an IRPA claim against a website containing public information about lawyers, like their name, educational background, and phone number. 206 F. Supp. 3d 1384, at 1386-89 (N.D. Ill. 2016). The platform didn't charge users but sold advertisements. *Id.* The court dismissed the case anyway. *Id.* It held that the defendant's publication of publicly available information was constitutionally protected noncommercial speech, even if the intent of the free public information was to sell advertisements, just like "newspaper[s] or yellow page director[ies]." *Id.* at 1388. The same result follows here.

[3] *See also, e.g.*, *Health Sys. Agency of N. Virginia v. Virginia State Bd. of Med.*, 424 F. Supp. 267, 272 (E.D. Va. 1976) (directory of physician information protected by the First Amendment); *see also Marshall v. ESPN Inc.*, 111 F. Supp. 3d 815, 837 (M.D. Tenn. 2015) (speech that "convey[s] factual information" is "noncommercial speech").

Yardi's speech would still be non-commercial even if *Bolger* applied. First, the property reports are not advertisements. *Bolger*, 463 U.S. at 66. Plaintiffs concede as much in their Complaint by admitting that any promotional content on PropertyShark.com is separate from the free reports Plaintiffs have challenged here. *See* ECF No. 1-1 ¶ 29 (alleging offers for paid subscriptions appear "[a]fter the user generates their free report" and only if user clicks additional search results that bring up a new page). Second, the free reports don't reference "a specific product." *Bolger*, 463 U.S. at 66. PropertyShark offers paid subscriptions *separately*—just like in *Vrodlyak*. 206 F. Supp. 3d at 1389 (republishing public information was non-commercial speech even when it appeared alongside advertisements). Third, even if Yardi has an economic motivation to offer each user a free property report because it hopes that one free report will entice users to sign up for a subscription, that is insufficient to render Yardi's speech commercial. *Bolger*, 463 U.S. at 67 ("[T]he fact that Youngs has an economic motivation for mailing the pamphlets would clearly be insufficient by itself to turn the materials into commercial speech").

At bottom, Yardi's alleged publication of admittedly truthful, publicly available property information in free trials is protected non-commercial speech.

### 2. Plaintiffs' Interpretation of IRPA Fails Strict Scrutiny

Content-based laws governing non-commercial speech must pass strict scrutiny—*i.e.*, be the "least restrictive means available to further a compelling governmental interest." *Dex Media*, 696 F.3d at 957. Plaintiffs' application of IRPA fails that test.

Initially, Plaintiffs' application of IPRA here is content-based in at least two ways. First, it would regulate property reports that mention an individual's name but *not* those that only contain other property information. *See* SUMF ¶ (Yardi's PropertyShark database contains property reports identifying companies as the "owner" of the property). And second, it would impose liability if the information is

used to "advertise" additional reports. That would make a website that says, "here is a report without names," legal while penalizing one that says, "here is a property report *with* names." Because you must look at the *content* of the report to determine if IRPA applies, "[t]hat is about as content-based as it gets." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2346-47 (2020) (pl. op.) (federal statute was content-based because it applied to attempts to collect private debt, but not government debt). Contrast that with a content-neutral "time, place, or manner" restriction, which might prohibit a private company from republishing any public information whatsoever (though that may be unconstitutional for other reasons). *See Ward v. Rock Against Racism*, 491 U.S. 781, 782, (1989) (explaining time, place, or manner restrictions).

Few content-based laws pass strict scrutiny, and Plaintiffs' interpretation of IPRA is no different. *Bolger*, 463 U.S. at 65; *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011) ("[It is a]ll but dispositive to conclude that a law is content based"). Illinois has no interest, let alone a "compelling" one, in prohibiting speech about information that's already been made public *by Cook County*. *See* SUMF ¶¶ 39 (both acknowledging their information was already published by the government). Nor is Plaintiffs' interpretation of IRPA the "least restrictive means" to further that interest, assuming it exists. Illinois could adopt opt-out programs allowing residents to keep their property ownership records private, for example. *See Dex Media*, 696 F.3d at 957 (opt-out programs were a less restrictive means for distributing yellow pages).

### 3. Plaintiffs' Interpretation of IRPA Also Fails Intermediate Scrutiny

Even if the challenged speech was commercial, Plaintiffs' interpretation could not pass intermediate scrutiny because "[c]ommercial speech that is not false or deceptive and does not concern unlawful activities [] may be restricted only in the

service of a substantial governmental interest, and only through means that directly advance that interest." *Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 638 (1985).

There's no substantial government interest in restricting Yardi's speech for several reasons. To start, IRPA was designed to protect citizens from having their identities used to promote products or services they don't endorse. 90th Ill. Gen. Assem., House Proceedings, May 21, 1998, at 7–8 (legislative examples). But here, Yardi's free property reports do not associate Plaintiffs with any message at all—they merely show information about their properties that Cook County already makes available. *See* SUMF ¶ 18. So, any interest that Illinois could conceivably have in suppressing Yardi's alleged publication of this public information is vastly outweighed by Yardi's First Amendment right to compile and repeat truthful information and to "inform the public of the [ ] nature" of its "products" (which are just a compilation of publicly-available information). *Bates v. State Bar of Arizona*, 433 U.S. 350, 364 (1977).

****

Of course, the Court can and should avoid addressing these constitutional infirmities by adopting the "narrow[er] reading" of the statute urged by Yardi. *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 371 (2002). Courts regularly adopt the textually plausible statutory interpretation that avoids constitutional concerns. *Edward J. DeBartolo Corp. v Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568 (1988) (applying constitutional avoidance in First Amendment context). The Court should do so here.

### C. Plaintiffs' Claims Were Filed Outside the 1-Year Statute of Limitations

Last, even if Yardi's conduct fell within IPRA's scope and Plaintiffs' interpretation were constitutional, their claims would still be time-barred.

IRPA has a one-year statute of limitations and courts in this district regularly apply it. *See Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. 2006) (holding IRPA claims have one-year statute of limitations because law replaced the common law tort of appropriation of likeness, which also had a one-year period); *Cantwell. v. N.H. Scott and Hebblethwaite Funeral Home, Inc.*, 2023 IL App (1st) 221335-U, at ¶16, 2023 WL 4288342, at *2 (2023); *Giovannelli v. Stocktrek Images, Inc.*, 2025 WL 663020, at *2–3 (N.D. Ill. Feb. 3, 2025).[4]

An IRPA limitations period starts to run "when the allegedly infringing publication was first published." *Bonilla*, 628 F. Supp. 3d at 817–18 (quoting Restatement (Second) of Torts § 577A cmt. a (1977)). This "single publication rule" provides that "any one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication." *Id.* In other words, the "dissemination of that same offending item thereafter does not give rise to a new cause of action" after the first publication. *Blair*, 369 Ill. App. 3d at 1194 (quotation omitted). So a new cause of action can only exist "where the publication is altered so as to reach a new audience or promote a different product." *Id.* "To hold otherwise would cause an attendant problem of an endless tolling of the statute of limitations." *Id.* at 1193.

Plaintiffs' claims are untimely because their "identities" (their names) were available on the PropertyShark database in connection with their properties more than a year before filing suit. *See* SUMF ¶ 14 (Burzawa's name first available on December 3, 2021); *id.* ¶ 10 (Shephard's name first available on May 13, 2023). Because names are the only information about Plaintiffs' identities contained on the

[4] *Giovannelli v. Walmart, Inc.*, 2024 WL 4301145, at *2 (N.D. Ill. Sept. 26, 2024); *HASelect Med. Receivables Litig. Fin. Fund Int'l, SP v. Clark*, 2024 WL 1328839, at *4 (N.D. Ill. Mar. 28, 2024); *Bonilla v. Ancestry.com Operations Inc.*, 628 F.Supp.3d 812, 817 (N.D. Ill. 2022); *Lopez v. Admiral Theatre, Inc.*, 2019 WL 4735438, at *2 (N.D. Ill. Sept. 26, 2019); *Toth-Gray v. Lamp Liter, Inc.*, 2019 WL 3555179, at *4 (N.D. Ill. July 31, 2019).

PropertyShark platform, the single publication rule dictates that the statute of limitations ran one year after the information became available on the platform.

Nor does it matter that Plaintiffs' litigation consultant accessed their property reports for the first time around a year ago. The *Bonilla* court rejected a similar argument, concluding that even though the information about the plaintiffs (yearbook photos) was generated for the first time in response to a user's query, that wasn't enough to restart the statute of limitations. 628 F. Supp. 3d at 819. That's because "the *company's* only 'conscious intent' to publish the image c[ame] from the initial upload of the yearbook, after which the technology, not the company, d[id] the real work." *Id.* (emphasis added). The same is true here because PropertyShark added Plaintiffs' "identities" in connection with their properties to the PropertyShark database several years ago. SUMF ¶¶ 10, 14. It was a litigation consultant on behalf of Plaintiffs' counsel who subsequently generated the property reports, and it wouldn't make sense to conclude that their actions "published" the reports.

## V. CONCLUSION

This Court should grant summary judgment on any (or all) of the grounds above. Any other ruling would create a perverse incentive for lawyers to manufacture their own clients' injuries, and to do so whenever they wanted, nullifying the statute of limitations and undermining the fundamental purpose of IRPA: Protecting citizens from having their identities wrongfully used by businesses to imply they endorsed their products or services without their consent. Worse, Plaintiffs' interpretation would violate the First Amendment by allowing the government to publish citizens' property data while penalizing private companies for doing the same thing. That's exactly what the Supreme Court said was impermissible in *American Association of Political Consultants*, 140 S. Ct. at 2346-47. This Court should follow numerous other judges in this district who have rejected similar claims and grant Yardi summary judgment.

Dated: April 30, 2025

*/s/Ryan D. Watstein*

Ryan D. Watstein (*pro hac vice*)
James M. Ruley (*pro hac vice*)
WATSTEIN TEREPKA LLP
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
Telephone: (404) 905-2416
ryan@wtlaw.com
jruley@wtlaw.com

Justin M. Penn
HINSHAW & CULBERTSON LLP
191 N. Franklin Street, Suite 2500
Chicago, Illinois 60606
jpenn@hinshawlaw.com
Telephone: (312) 704-3000
Bar ID Number: 06283726

*Attorneys for Defendant Yardi Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2025, I caused to be electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/Ryan D. Watstein*
Ryan D. Watstein