**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANGELA SHEPHARD and ANNA BURZAWA, Illinois residents, individually and as the representatives of a class of similarly-situated persons, | ) | |
| Plaintiffs, | ) | Case No.: 1:24-cv-07698 |
| v. | ) | Hon. Andrea R. Wood |
| YARDI SYSTEMS, INC., a California corporation, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

Wallace C. Solberg
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
(847) 368-1500
wsolberg@andersonwanca.com
bwanca@andersonwanca.com

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page(s)**

Table of Contents ....................................................................................................i
Table of Authorities ..................................................................................................ii
Background ..............................................................................................................1
Facts Relevant to this Opposition ............................................................................1
Standards for Summary Judgment ............................................................................4
Argument ..................................................................................................................4
I. IRPA protects property rights and has no statute of limitations; accordingly, under 735 ILCS § 5/13-205, the limitations period is five years; even if the limitations period is one year, Yardi's admissions preclude application of the single publication rule and demonstrate conclusively that Yardi's IRPA violations were continuing ............................................................4
A. The statute of limitations for IRPA claims is five years ..............................5
B. Assuming *arguendo* the statute of limitations for IRPA claims is one year, Yardi's arguments are factually and legally unsustainable under the discovery rule and because the violations have been continuing ..........................................................................8
II. In violation of IRPA, Yardi used Plaintiffs' identities for a commercial purpose, namely, to advertise and sell subscriptions to PropertyShark.com..............................10
III. Yardi's challenge to "Plaintiffs' interpretation" of the First Amendment fails...............16
A. Yardi's free trial satisfies the constitutional test for commercial speech ............16
B. Plaintiffs' IRPA claims easily satisfy intermediate scrutiny ..............................19
Conclusion ................................................................................................................20

## TABLE OF AUTHORITIES

**CASES** **Pages(s)**

*Abstract & Title Guar., Co. v. Chicago, Inc. Co.*,
489 F.3d 808 (7th Cir. 2007) ....................5

*Anderson v. Liberty lobby, Inc.*,
477 U.S. 242 (1986)....................4

*Blair v. Nevada Landing Partnership*,
859 N.E.2d 1188 (Ill. App. 2006)....................7

*Bolger v. Young Drug Prod. Corp.*,
463 U.S. 60 (1983)....................16

*Bonilla v. Ancestry.com Operations, Inc.*,
("*Bonilla I*") 574 F. Supp. 3d 582 (N.D. Ill. 2021)....................11, 15

*Bonilla v. Ancestry.com Operations, Inc.*,
("*Bonilla II*") 628 F. Supp. 3d 812 (N.D. Ill. 2022) ....................9, 10

*Bonilla v. Ancestry.com Operations, Inc.*,
("*Bonilla III*") 2023 WL 3602801(N.D. Ill. May 23, 2023)....................7–8

*Boshears v. PeopleConnect, Inc.*,
2022 WL 888300 (W.D. Wash. Mar. 25, 2022)....................20

*Braundmeier v. Ancestry.Com Operations, Inc.*,
2025 WL 327768 (N.D. Ill. Jan. 29, 2025)....................14

*Cantwell v. N.H. Scott and Hebblethwaite Funeral Home, Inc.*,
2023 IL. App. (1st) 221335-U ....................7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................4

*Ciolino v. Simon*,
2021 IL 126024 ¶¶ 37-40....................9–10

# TABLE OF AUTHORITIES

**CASES** **Pages(s)**

*Cothron v. White Castle Sys., Inc.*,
2023 WL 128004 ¶¶ 39 (2023)....6, 8, 14

*DeSmet ex rel. Estate of Hays v. Cnty. of Rock Island*,
848 N.E.2d 1030 (Ill. 2006)....15

*Dex Media W., Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012)....19

*Dobrowolski v. Intelius, Inc.*,
2018 WL 11185289 (N.D. Ill. May 21, 2018)....12, 15

*Ezell v. City of Chicago*,
651 F.3d 684 (7th Cir. 2011)....20

*Fischer v. Instant Checkmate LLC*,
2022 WL 971479 (N.D. Ill. Mar. 31, 2022)....11–14

*Gabiola v. Sarid*,
2017 WL 4264000 (N.D. Ill. Sept. 26, 2027)....12

*Gaul v. CheckPeople, LLC*,
2022 WL 3212067 (C.D. Ill. Aug. 9, 2022)....12

*Gaul v. SignalHire LLC*,
2024 WL 3653876 (C.D. Ill. Aug.5, 2024)....11–12

*Gaul v. Truth Now, LLC*,
2022 WL 3647257 (C.D. Ill. Aug. 24, 2022)....11–19

*Giovanelli v. Stocktrek Images, Inc.*,
2025 WL 663020 (N.D. Ill. Feb. 3, 2025)....5, 7

*Giovannelli v. Walmart*,
2024 WL 4301145 (N.D. Ill. Sept. 26, 2024)....7, 9

## TABLE OF AUTHORITIES

**CASES** **Pages(s)**

*Green v. Datanyze*,
2024 WL 168123 (N.D. Ill. Jan. 16, 2024)............................................ 11, 15

*HASelect Med. Receivables Litig. Fin. Fund Int'l, SP v. Clark*,
2024 WL 1328839 (N.D. Ill. Mar. 28, 2024) ..........................................7

*Health Systems Agency of Northern Virginia v. Virginia State Board of Medicine*,
424 F. Supp. 267 (E.D. Va. 1976) ......................................................................19

*Hoffower v. Seamless*,
("*Hoffower I*")2022 WL 17128949 (N.D. Ill. Nov. 23, 2022) .................15

*Hoffower v. Seamless*,
("*Hoffower II*") 736 F.3d 605 (N.D. Ill. 2024) ....................................... 12–14

*Huston v. Hearst Communications, Inc.*,
53 F.4th 1097 (7th Cir. 2022)..................................................................11

*Jordan v. Jewel Food Stores, Inc.*,
743 F.3d 509 (7th Cir. 2014) ..................................................................16

*Joseph v. Yardi Systems, Inc.*,
No. 24-cv-11026 (N.D. Ill)......................................................................14

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D. Cal. 2022)......................................................17

*Krause v. RocketReach, LLC*,
561 F. Supp. 3d 778 (N.D. Ill. 2021)........................................... 11, 17-19

*Lopez v. Admiral Theatre, Inc.*,
2019 WL 4735438 (N.D. Ill. Sept. 26, 2019)...........................................7

## TABLE OF AUTHORITIES

**CASES** **Pages(s)**

*Lukis v. Whitepages, Inc.*,
("*Lukis I*") 454 F. Supp. 3d 746 (N.D. Ill. 2020) ... *passim*

*Lukis v. Whitepages, Inc.*,
*("Lukis II")* 542 F. Supp. 3d 831 (N.D. Ill. 2020) ... 15, 18–19

*Mackey v. PeopleConnect, Inc.*,
2023 WL 2561621 (N.D. Ill. Mar. 17, 2023) ... 11, 14, 18–19

*Martin v. Living Essentials LLC*,
653 Fed. Appx. 482 (7th Cir. 2016) ... 5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ... 4

*Nieman v. VenusLaw, Inc.*,
512 Fed. App'x 635 (7th Cir. 2013) ... 19

*Pearson v. Edgar*,
153 F.3d 397 (7th Cir. 1998) ... 20

*Rosenbach v. Six Flags Entertainment Corp.*,
2019 IL 123186 ¶ 38 (2019) ... 8

*Siegel v. Zoominfo Tech., LLC*,
2021 WL 4306148 (Sept. 22, 2021) ... 11, 15

*Taylor v. Legacy Healthcare Fin. Servs.*,
2021 IL. App. (1st) 210279 (2021) ... 8

*Thompson v. Getty Images (US), Inc.*,
2013 WL 3321612 (N.D. Ill. July 1, 2013) ... 15

*Tims v. Black Horse Carriers, Inc.*,
2023 IL 127801 (2023) ... 6–8

# TABLE OF AUTHORITIES

**CASES** **Pages(s)**

*Toney v. L'Oreal*,
2002 WL 31455975 (N.D. Ill 2002)........................................................8, 20

*Toth-Gray v. Lamp Liter, Inc.*,
2019 WL 3555179 (N.D. Ill. July 31, 2019) ..........................................7

*Trannel v. Prairie Ridge Media, Inc.*,
987 N.E. 2d 923 (Ill. App. Ct. 2013) ............................................................... 11–12

*Vrodolyak v. AVVO, Inc.*,
206 F. Supp. 3d 1384 (N.D. Ill. 2016)......................................................18

**STATUTES**

735 ILCS § 5/13-205..........................................................................4–8

735 ILCS § 5/13-201..........................................................................6–8

735 ILCS § 5/13-201(15)(c) ...............................................................6, 8

735 ILCS § 5/13-201(15)(d) ...............................................................6, 8

740 ILCS § 14/1 ...................................................................................6

740 ILCS § 165/1 .................................................................................9

765 ILCS § 1075/5 ..............................................................................1, 11

765 ILCS § 1075/10 ............................................................................13

765 ILCS §1075/15 .............................................................................1, 5, 8

765 ILCS § 1075/30 ............................................................................1, 20

765 ILCS § 1075/30(a) .......................................................................1

765 ILCS § 1075/35(b)(1)-(4) .............................................................20

**Rules and Regulations**

Fed. R. Civ. P. 56(a) ............................................................................4

Ill. Civ. R. 56.1 .....................................................................................2

# TABLE OF AUTHORITIES

**Other Authorities** **Pages(s)**

J. Thomas McCarthy, 2 RTS. OF PUBLICITY AND PRIVACY
§ 11:52 (2d ed. 2004) ....................................................................................20

Plaintiffs Anna Burzawa ("Burzawa") and Angela Shephard ("Shephard") (collectively, "Plaintiffs"), respectfully submit this Memorandum in Opposition to the Motion for Summary Judgment filed by Defendant Yardi Systems, Inc. ("Yardi" or "Defendant"). (Docs. 30, 31, 32)

**Background**

This case is a putative class action brought pursuant to the Illinois Right of Publicity Act ("IRPA"), 765 ILCS § 1075/30, which prohibits using an individual's identity for commercial purposes without having obtained previous written consent. 765 ILCS § 1075/30(a). IRPA defines "commercial purpose" in part as "the public use or holding out of an individual's identity" (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services, and/or (ii) for purposes of advertising or promoting products, merchandise, goods, or services. *Id*. IRPA defines "identity" as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener," including but not limited to "name." *Id*. § 1075/5. Significantly, IRPA expressly codifies the rights at issue as property rights, and states that those property rights may be transferred. *Id.* § 1075/15.

In violation of IRPA, Yardi used Plaintiffs' identities, without their written consent, for a commercial purpose, namely, to advertise subscriptions to its PropertyShark real estate search platform through a "free trial," a "textbook violation" of IRPA. *See infra* at 10-11. Yardi moves for summary judgment, arguing: (1) Plaintiffs' claims are barred by the statute of limitations for IRPA claims; (2) it did not use Plaintiffs' identities for a commercial purpose; and (3) Plaintiffs' application of IRPA violates the First Amendment. As discussed in detail below, Yardi's arguments are wrong factually and as a matter of law. The motion should be denied.

**Facts Relevant to this Opposition**

Yardi owns and operates the website www.PropertyShark.com, a property research website

that offers information about residential properties in the United States, including Cook County, Illinois. (PSOAF ¶ 1).[1] There are three levels of "users" for the PropertyShark platform: (1) the completely anonymous user (who can access the website with "limited ability" to see data); (2) a registered user ("free trial user"), who has signed up with their email address, but is not yet a subscriber; and (3) a subscriber. (PSOAF ¶ 2). PropertyShark offers a "free account" that allows a free trial user one free property report; any additional property reports require the free trial user to subscribe to PropertyShark. (PSOAF ¶¶ 3, 4; Pls. Resp DSOF ¶ 9). Free trial users and subscribers to PropertyShark can search its database to access real estate information such as a property's address, its owner's name, its purchase price, date of purchase, and tax details. (Pls. Resp. DSOF ¶ 2).

One method by which PropertyShark provides information regarding residential properties is in a format referred to as a property report, which Yardi's representative refers to as a "summary report." (PSOAF ¶ 9). The summary report, which can be downloaded in a PDF format, represents a subset of the data that is available to subscribers. (PSOAF ¶ 9). The "Shephard Property Report" is a summary report that was created on April 24, 2024, from data contained in the PropertyShark database; it contains categories for property owner, address, property taxes and assessed value. (PSOAF ¶ 10). The "Burzawa Property Report" is a summary report that was created on May 17, 2024, from data in the PropertyShark database and includes the same data. (PSOAF ¶ 11).

The data contained in the PropertyShark database for the section titled "Property Taxes" shown in the Shephard and Burzawa Property Reports was obtained by PropertyShark from the Cook County Assessor and uploaded into the PropertyShark database on February 21, 2024.

[1] Citations to the Parties' Local Rule 56.1 Statements of Fact are identified as follows: "Pl. Resp. DSOF" for Plaintiffs' responses to the Defendant Yardi's Statements of Material Fact; and "PSOAF" for Plaintiffs' Statements of Additional Fact.

(PSOAF ¶¶ 13, 15). Additional property tax data contained in the PropertyShark database for Shephard's and Burzawa's properties was obtained by PropertyShark from the Cook County Assessor and uploaded into the PropertyShark database on July 4, 2024. (PSOAF ¶¶ 14, 16). Tax data from the Cook County Assessor is downloaded through a paid account; it changes on a year-to-year basis in Cook County, Illinois. (PSOAF ¶¶ 12, 17).

Between May 13, 2023 and January 29, 2025, any free trial user or subscriber who queried PropertyShark for "Angela Shephard" or "20081 Tam Oshanter CT, Olympia Fields, IL 60461" ("Shephard Property") would have been able to see Plaintiff Shephard as the owner either directly on the PropertyShark website or through a downloaded PDF. (Pls. Resp. DSOF ¶¶ 7, 12). Between December 3, 2021 and January 29, 2025, any free trial user or subscriber who queried PropertyShark for "Anna Burzawa" or "5608 N. Mango Ave, Chicago, Illinois 60646" ("Burzawa Property") would have been able to see Plaintiff Burzawa as the owner either directly on the PropertyShark website or through a downloaded PDF. (Pls. Resp. DSOF ¶¶ 7, 16). Every time a free trial was undertaken within one year of the filing of the Complaint (July 15, 2023, to July 15, 2024), Shephard's and Burzawa's names were accessible in response to such a search, including searches by ZIP code, city, and county. (PSOAF ¶¶ 7, 20). Because the data within the PropertyShark database is updated throughout the year, searches from year to year would return different results depending on the search criteria entered. (PSOAF ¶ 21).

Yardi did not have written consent from either Burzawa or Shephard to use their identities for a commercial purpose or any purpose. (PSOAF ¶ 22, 28-29). Neither Shephard nor Burzawa had heard of PropertyShark when they saw an advertisement in March 2024 on Facebook put out by Don Bivens PLLC., Pls.' Resp. DSOF ¶¶ 21, 23, and neither knew when the information about their identities and associated properties were first "available" on the PropertyShark website, *id.* ¶

23. Yardi's representative admitted that if a person had never heard of PropertyShark, there would be no reason for that person to know the existence of the PropertyShark database, and such a person would not know that any data related to them would be included in the PropertyShark database. (*Id.* ¶ 24).

## **Standards for Summary Judgment**

Summary judgment is appropriate only if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty lobby, Inc.*, 477 U.S. 242, 248 (1986). If there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment may not be granted. *Anderson*, 477 U.S. at 250. When making this determination, "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor. *Anderson* 477 U.S. 255.

## **Argument**

### **I. IRPA protects property rights and has no statute of limitations; accordingly, under 735 ILCS § 5/13-205, the limitations period is five years; even if the limitations period is one year, Yardi's admissions preclude application of the single publication rule and demonstrate conclusively that Yardi's IRPA violations were continuing.**

Yardi argues that IRPA has a one-year statute of limitation period, and that Plaintiffs' claims (filed on July 15, 2024, *see* Doc. 1-1) are untimely based on the single publication rule because Burzawa's identity and status as the owner of the Burzawa Property was first entered into the PropertyShark database on December 3, 2021, *see* Pls.' Resp. DSOF ¶ 10, and Shephard's

identity and status as the owner of the Shephard was first entered into the PropertyShark database on May 13, 2023, *id*. ¶ 14. (Mem. at 14, 15). Yardi's argument fails as a matter of law.

**A. The statute of limitations for IRPA claims is five years.**

The Illinois Supreme Court has yet to address the statute of limitations for claims under IRPA, and the Seventh Circuit has repeatedly declined to predict how the Illinois Supreme Court would decide the issue; it is an open question. *Giovanelli v. Stocktrek Images, Inc.*, 2025 WL 663020, at *3 (N.D. Ill. Feb. 3, 2025); *Martin v. Living Essentials LLC*, 653 Fed. Appx. 482,485-86 (7th Cir. 2016). Accordingly, this Court is required to predict how the Illinois Supreme Court would decide the statute of limitations for claims brought under IRPA. *Abstract & Title Guar., Co. v. Chicago, Inc. Co.*, 489 F.3d 808, 811 (7th Cir. 2007).

The "catchall" provision for statutes of limitation in the Illinois Code of Civil Procedure is found at 735 ILCS § 5/13-205 (hereafter, "Section 5/13-205"); it provides in part that: "actions . . . to recover damages for an injury done to property, real or personal or damages for the detention or conversion thereof . . . and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." Plaintiffs' rights under IRPA are transferable property rights, 765 ILCS § 1075/15, and IRPA does not contain a statute of limitations, *i.e.*, it is one of those "civil actions not otherwise provided for," 5/13-205. Accordingly, based on the express language of IRPA and of Section 13-205, the limitations period for claims under IRPA is five years, making Plaintiffs' IRPA claims timely. (Pls. Resp. DSOF ¶¶ 10, 12, 14, 16).

The only way to hold the limitations period for IRPA to be one year is to excise from IRPA the express language that states IRPA protects a transferable property right, *see* 765 ILCS § 1075/15, and to ignore Section 5/13-205's unambiguous language that a limitation period of five years for claims regarding violation of property rights, and for "civil actions not otherwise

provided for," *i.e.*, no statute of limitations. Such gerrymandering when interpreting a statute is precluded under Illinois Supreme Court jurisprudence. *See Cothron v. White Castle Sys., Inc.*, 2023 WL 128004 ¶¶ 39, 40 (2023) ("courts cannot rewrite a statute to create new elements or limitations not included by the legislature," and "where statutory language is clear, it must be given effect.")

In *Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801, ¶¶ 34, 37 (2023), the Court held that the five-year "catch-all" provision of Section 5/13-205 applied to claims under the Illinois Biometric Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq.* (which also did not have a statute of limitations), rather than the one-year statute of limitations provided for in 735 ILCS § 5/13-201("actions for slander, libel or for publication of matters violating the right of privacy shall be commenced within one year after the cause of action accrued"). *Tims* noted that "Illinois courts have routinely applied this five-year catchall limitations period to other statutes lacking a specific limitations period." *Id.* ¶ 34 (collecting cases). Although the Court recognized that two of the five causes of action under BIPA, Sections 15(c) and 15(d), contained words that "could be" defined as involving publication (and thus the one-year limitations period of Section 5/13-201 could be applied), *id.* ¶¶ 32, 37, the Court held that "because [BIPA] does not have its own limitations period; because the subsections are causes of action 'not otherwise provided for'; and because we must insure certainty, predictability, and uniformity as to when the limitations period expires in each subsection, the Act is subject to the default five-year limitations period found in section 13-205 of the Code." *Id.* ¶ 37 (citations omitted). That same rationale applies here, but only with more force. Like *Tims*, IRPA has no statute of limitations, but unlike *Tims*, there is nothing that could be defined as involving "publication of matters violating the right of privacy" for the simple reason that IRPA protects only property rights.

Yardi's authorities for its mistaken one-year limitations argument are all derivative of the

pre-*Tims* (and wrongly decided as to the statute of limitations) case of *Blair v. Nevada Landing Partnership*, 859 N.E.2d 1188, 1192 (Ill. App. 2006), and all fail to recognize that the rights under IRPA are property rights.[2] Although *Blair* recognized that the IRPA "completely supplanted" the common law tort of appropriation of likeness, it nonetheless applied the one-year limitations period from said common law tort. *Id.* at 1192. Tellingly, *Blair* fails to even mention the "catchall" provision of Section 5/13-205, and failed to cite any authority to support its application of a common law statute of limitations for privacy rights to a statutorily created transferable ***property*** right. *Blair*, 859 N.E.2d at 1192. Indeed, the *Blair* court mistakenly equates the property rights protected by IRPA to claims for "libel, slander, and invasion of privacy." *Id*. at 1193. In short, *Blair* is unpersuasive, and for the reasons set forth above, its holding is not what the Illinois Supreme Court would decide if faced with this issue.

The only decision of which Plaintiffs are aware that addresses *Tims* as applied to IRPA is *Bonilla v. Ancestry.com Operations, Inc*. ("*Bonilla III*"), 2023 WL 3602801, at *2 (N.D. Ill. May 23, 2023), which held that the one-year statute of limitations (Section 5/13-201) applied to IRPA claims, rather than a five-year limitations period (Section 5/13-205). *Bonilla III* cannot be reconciled with *Tims*, the text of IRPA, and controlling Illinois Supreme Court authority. The *Bonilla III* court reasoned that BIPA claims are subject to the five-year statute of limitations only because BIPA "does not regulate" the "publication of matters violating the right of privacy." 2023 WL 3602801, at *3. But that is incorrect. The Illinois Supreme Court has expressly and repeatedly

[2]*See* Mem. at 14 & n.4, citing *Cantwell v. N.H. Scott & Hebblethwaite Funeral Home, Inc*., 2023 IL. App. (1st) 221335-U, at ¶ 16, *Giovannelli v. Stocktrek Images, Inc*., 2025 WL 663020, at *2-3 (N.D. Ill. Feb. 3, 2025), *Giovannelli v. Walmart,* 2024 WL 4301145, at *2 (N.D. Ill. Sept. 26, 2024), *HASelect Med. Receivables Litig. Fin. Fund Int'l, SP v. Clark*, 2024 WL 1328839, at *4 (N.D. Ill. Mar. 28, 2024), *Bonilla v. Ancestry.com Operations, Inc*. ("*Bonilla II*"), 628 F. Supp. 3d 812, 817 N.D. Ill. 2022), *Lopez v. Admiral Theatre, Inc*., 2019 WL 4735438, at *2 (N.D. Ill. Sept. 26, 2019), and *Toth-Gray v. Lamp Liter, Inc*., 2019 WL 3555179, at *4 (N.D. Ill. July 31, 2019).

recognized that BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entertainment Copr.*, 2019 IL 123186 ¶ 33 (2019); *Cothron*, 2023 WL 128004 ¶ 36 (same); *see also Taylor v. Legacy Healthcare Fin. Servs*., 2021 IL. App. (1st) 210279 ¶ 70 (2021) ("the whole point" of BIPA "is that biometric rights are inherently not transferable.").

Moreover, as discussed above, the *Tims* Court agreed that section 15(c) and 15(d) of BIPA "could be" defined as involving "publication," *id*. ¶ 32, and that section 5/13-201 "could be" applied to sections 15(c) and 15(d) of the Act, but held that a 5 year limitations period applied chiefly based on the "catchall" provision of Section 5/13-205. The *Bonilla III* court also thought that IRPA protected the publication of matters related to the right of privacy (and thus was subject to the one-year limitations period under Section 5/13-201). *Bonilla III*, 2023 WL 3602801, at *3. Again, IRPA protects transferable property rights, not privacy rights. 765 ILCS § 1075/15; *see also Toney v. L'Oreal*, 2002 WL 31455975, at *3 (N.D. Ill 2002), *vacated on other grounds*, 406 F.3d 905 (7th Cir. 2005) (rejecting attempt to equate the right of privacy with right of publicity in IRPA, and holding Section 5/13-205 five-year statute of limitations applied).

In sum, the limitations period for IRPA claims is governed by the five-year "catchall" under 735 ILCS § 5/13-205 for property claims and for claims which for which there is no limitations period provided. Accordingly, Plaintiffs' IRPA claims are timely.

**B. Assuming *arguendo* the statute of limitations for IRPA claims is one year, Yardi's arguments are factually and legally unsustainable under the discovery rule and because the violations have been continuing.**

Assuming *arguendo* that a one-year statute of limitations applies to IRPA claims, Plaintiffs' claims are still timely. Yardi asserts Plaintiffs' claims are untimely under the single publication rule because the statute ran more than a year before Plaintiffs' IRPA claims were filed. (Mem. at 14, 15). The undisputed facts and Yardi's admissions dispose of its argument.

First, the "discovery rule," which delays the start of the statute of limitations until the plaintiff knows or reasonably should know he has been injured, applies under the single publication rule if the publication "was hidden, inherently undiscoverable, or inherently unknowable." *Bonilla II*, 628 F. Supp. 3d at 819; *Giovannelli v. Walmart,* 2024 WL 4301145, at *3 (N.D. Ill. Sept. 26, 2024). It is undisputed that neither Plaintiff had heard of PropertyShark until March 2024, (Pls. Resp. DSOF ¶¶ 21, 23), and it is undisputed that neither knows when the information regarding their identities and associated properties was first available on PropertyShark, (*id.* ¶ 23). Yardi's representative has admitted that under such circumstances, there would be no reason for Plaintiffs to know they were in the PropertyShark database. (*Id.* ¶24). In sum, the presence of Plaintiffs' identities and property information in the PropertyShark database was "hidden, inherently undiscoverable, or inherently unknowable," precluding application of the single publication rule. *Bonilla II*, 628 F. Supp. 3d at 819; *Giovannelli,* 2024 WL 4301145, at *3.

Second, the undisputed facts conclusively demonstrate that the "continuing violation rule," rather than the single publication rule, applies here. In *Ciolino v. Simon*, 2021 IL 126024 ¶¶ 37-40, 43, the Illinois Supreme Court held that the single publication rule, codified at 740 ILCS § 165/1, "does not gather under its umbrella all repetitions of allegedly defamatory material appearing in the same medium," that "multiple publications of the defamatory material may still exist," and that subsequent publications intended to reach a new audience are not subject to the single-publication rule. And in *Bonilla II*, 628 F. Supp. 3d at 818, the court expressly recognized that the continuing violation rule does apply where the image is "changed, altered, reused, or expanded upon the original image". *Id.*

Here, it is undisputed that Plaintiffs' data in the PropertyShark database was changed, altered, and edited within one year of the Complaint, namely, on February 21, 2024, and again on

July 4, 2024. (PSOAF ¶¶ 13-16). Yardi has admitted that every time a free trial was undertaken within one year of the filing of the Complaint (July 15, 2023, to July 15, 2024), Plaintiffs' identities were accessible in response to such a search, (Pls. Resp. DSOF ¶¶ 12, 16; PSOAF ¶ 20), and that because the data within the PropertyShark database is updated throughout the year, any searches that are done throughout the year might return different results depending on the search criteria entered. (PSOAF ¶ 21). Because each "free trial user" gets one free property report, each new free trial search is, by definition, targeted to a new audience. (PSOAF ¶ 3). Accordingly, Yardi's violations of IRPA are continuing and Plaintiffs' IRPA claims are timely even with a one-year statute of limitations. *Ciolino*, 2021 IL 126024 ¶¶ 37-40, 43; *Bonilla II*, 628 F. Supp. 3d at 818.

Finally, Yardi "conscious intent"/"technology did the real work" gambit, *see* Mem. at 15, is unpersuasive in that Yardi, by its own admission, updated property tax data for Plaintiffs' properties on February 21, 2024, and on July 4, 2024, respectively. (PSOAF ¶¶ 13-16). Moreover, tax information and assessed values change on a year-to-year basis in Cook County (which is where Shephard's and Burzawa's properties are located), (*id.* ¶ 12), and it is updated throughout the year within the PropertyShark database, (*id.* ¶ 21). Indeed, Yardi states that PropertyShark's data is collected "both manually and automatically," and "its dedicated research team [that] makes sure the information [it] gather[s] is as accurate as it can be." (PSOAF ¶ 27). Thus each change constitutes a new publication, and the technology does not do all the work.

## II. In violation of IRPA, Yardi used Plaintiffs' identities for a commercial purpose, namely, to advertise and sell subscriptions to PropertyShark.com.

It is undisputed that PropertyShark offers a "free account" that allows the free trial user one free property report; any additional property reports require the free trial user to subscribe to PropertyShark. (*Id*. ¶ 3). Courts have repeatedly held that use of a plaintiff's identity in connection with a free preview to advertise or promote a monthly subscription service is a "textbook violation"

of IRPA. *See Green v. Datanyze*, 2024 WL 168123, at *2 (N.D. Ill. Jan. 16, 2024); *Gaul v. SignalHire LLC*, 2024 WL 3652876, at *8 (C.D. Ill. Aug. 5, 2024); *Gaul v. Truth Now, LLC*, 2022 WL 3647257, at *6 (C.D. Ill. Aug. 24, 2022); *Gaul v. CheckPeople, LLC*, 2022 WL 3212067, at *3-4 (C.D. Ill. Aug. 9, 2022); *Lukis v. Whitepages, Inc. ("Lukis I")*, 454 F. Supp. 3d 746, 760 (N.D. Ill. 2020); *Siegel v. Zoominfo Tech., LLC*, 2021 WL 4306148, at *3 (Sept. 22, 2021); *Bonilla v. Ancestry.com Operations, Inc.*, ("*Bonilla I*") 574 F. Supp. 3d 582, 595 (N.D. Ill. 2021); *Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778, 783 (N.D. Ill. 2021); *see also Mackey v. PeopleConnect, Inc.*, 2023 WL 2561621, at *9-10 (N.D. Ill. Mar. 17, 2023) (*vacated on other grounds*, 22-cv-342, Doc. 91, Aug. 2, 2023) (by soliciting the purchase of its subscription services by using plaintiff's image as part of its advertising flow, defendant held out plaintiff's identity to sell its product) (citing *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1101 (7th Cir. 2022)).

Yardi attempts to avoid these holdings by arguing that it did not "hold out" Plaintiffs' identities to advertise subscriptions to the PropertyShark platform because it didn't put their names on a "billboard," but instead "offered a trial of their product so a user could see how it works, and one piece of information amongst many included is that trial property report is a property owner's name." (Mem. at 7-8). This argument not only misconstrues the allegations against Yardi, but demonstrates liability. Plaintiffs' identities and property information did not just "appear" in PropertyShark, *see* Mem. at 7, but were instead "held out" by Yardi to sell and to advertise subscriptions to the PropertyShark website in violation of IRPA. 765 ILCS § 1075/5. Contrary to Yardi's argument, "the term 'holding out' does not require that the individual's identity was seen by others." *Fischer v. Instant Checkmate LLC*, 2022 WL 971479, at *10 (N.D. Ill. Mar. 31, 2022) (citing *Trannel v. Prairie Ridge Media, Inc.*, 987 N.E. 2d 923, 930 (Ill. App. Ct. 2013)); *Gaul v. CheckPeople, LLC*, 2022 WL 3212067, at *3 N.D. Ill. Aug. 9, 2022) (same). Rather, "holding out

. . . mean[s] the representation . . . of an individual's identity on or in connection with certain activities," and "thus turns on the defendant's conduct, and not what the public perceived." *Fischer*, 2022 WL 971479, at *10 (citing *Trannel*, 987 N.E.2d at 930).

Yardi's fixation with "publicly available information," *see* Mem. at 1, 3, 4-6, 8-11, is a road to nowhere and it infects Yardi's entire motion. *See Hoffower v. Seamless ("Hoffower II")*, 736 F.3d 605, 613 (N.D. Ill. 2024) (IRPA "covers all aspects of a person's identity, whether the information is derived from public or private sources") (citing *Lukis v. Whitepages, Inc. ("Lukis I")*, 454 F. Supp. 3d 746, 761 (N.D. Ill. 2020) (citing *Gabiola v. Sarid*, 2017 WL 4264000, at *6-7 (N.D. Ill. Sept. 26, 2027) (holding IRPA consent requirement applies to information contained in a public record); *Gaul v. SignalHire LLC*, 2024 WL 3653876, at *8 (C.D. Ill. Aug.5, 2024) (same). In other words, it does not matter that the data collected by Yardi regarding Plaintiffs' identities and their properties is "publicly available information"; what matters is that Yardi "held out" Plaintiffs' identities to advertise subscriptions to PropertyShark without Plaintiffs' written consent.[3]

Yardi relies on *Hoffower II*, 736 F.3d at 613, to argue that IRPA does not "permit a plaintiff to obtain relief based on her own attorney making a request for, and then obtaining, the plaintiff's identifying information." (Mem. at 8). Yardi misconstrues *Hoffower II*, which is inapposite to the undisputed facts before this Court. The defendant's (Seamless) platform in *Hoffower II* operated "entirely in real time," and that after search queries are entered, the information that is displayed in the search results is "compiled from available internet sources using the algorithm." 736 F.

[3] In addition, Plaintiffs in IRPA cases need not be famous nor demonstrate that their identities have "value" to have standing to bring an IRPA claim. *Hoffower II*, 736 F.3d at 614. IRPA also does not require that the commercial purpose be an apparent endorsement of the defendant's product or service. *See Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170, at *8 (N.D. Ill. Aug. 29, 2017).

Supp. 3d at 608. The court noted that "Seamless also asserts that it does not maintain a fixed archive of profiles for individuals or businesses because each profile is a "compilation of many pieces of data gathered over time from various sources, which Seamless generates in ***real time*** as it is requested by the user's search." *Id.* (emphasis added).

Indeed, the *Hoffower II* court distinguished *Fischer* on that very basis: "[U]nlike the defendant in *Fischer*, there is no evidence that Seamless stores the information that appears on its platform in an electronic database or directory." *Hoffower II*, 736 F. Supp. 3d at 615. Underscoring that distinction, the court stated that "although state and federal court guidance on the application of IRPA ***in the context of real-time search engines*** is limited, '[s]tatutory interpretation begins with the plain language of the statute.'" *Hoffower II*, 736 F. Supp. 3d at 615 (emphasis added) (citation omitted). The court held that the right protected by IRPA, *see* 765 ILCS § 1075/10, "is infringed only if the defendant used or exercised control over the plaintiff's identity in a manner to which the plaintiff did not consent." *Id*. at 615. The court found that plaintiff's identity (when searched for by her attorney) was only "used" by Seamless "to the extent that her identifying information could potentially appear among the billions of data points that Seamless's ***algorithm*** draws from to complete users' search queries," which the court found insufficient to constitute "holding out" her identity. *Id*.

That is not the case here—it is undisputed that PropertyShark "stores the information that appears on its platform in an electronic database or directory." *Hoffower II*, 736 F. Supp. 3d at 615. (*See* Pls. Resp. DSOF ¶¶ 2-6, 8, 10-12, 14-16). Thus, unlike *Hoffower II*, Plaintiffs' identities and property data are not the result of an attorney search of a real time search engine that "could potentially appear among the billions of data points that Seamless's ***algorithm*** draws from to complete users' search queries." In *Hoffower II*, the court found plaintiff's "profile" did not exist

until her name was searched. Here, Plaintiffs' identities and property data are the result of a methodical and repetitive gathering of data by PropertyShark, and are stored in the PropertyShark database. (*Id*; PSOAF ¶¶ 26-27.) Because "holding out" under IRPA does not require that Plaintiffs' identities be seen by others, and because liability under IRPA turns on Yardi's conduct, and not what the public perceived, *see Fischer*, 2022 WL 971479, at *10, Yardi's argument fails.

Yardi's reliance on *Braundmeier v. Ancestry.Com Operations, Inc*. 2025 WL 327768, at *5 (N.D. Ill. Jan. 29, 2025) is equally misplaced. (Mem. at 8-9). Unlike *Hoffower II*, there is no "real time search engine" using algorithms to scour the Internet for information in *Braundmeier*, making its reliance on the *Hoffower II* rationale mistaken. 2025 WL 327768, at *2-5. Moreover, *Braundmeier* states that courts (including *Hoffower II*) have "overwhelmingly concluded" that third-party viewership of plaintiff's information is not required to establish standing to bring a claim under IRPA, 2025 WL 327768, at *5, and IRPA says ***nothing*** regarding third-party viewership. In sum, *Braundmeier* has misapplied *Hoffower II*, and impermissibly imposed a third-party viewership requirement not contained in the statute. *See* n. 5, *infra*, at 15

Yardi's complaint that liability under IRPA for its free trial would be "crushing" as well as lead to a "nonsensical" and "absurd result," Mem. at 8, is a nonstarter. *See Cothron*, 2023 WL 128004 ¶ 40 ("We have found where statutory language is clear, it must be given effect, 'even though the consequences may be harsh, unjust, absurd, or unwise.'"); *see also* n. 5, *infra* at 15. [4].

[4] Yardi's complaints that the instant suit is "manufactured," "solicited," and "based on a misunderstanding of fact," Mem. at 4-5, are irrelevant, misguided, and not a defense to the IRPA claims against it. Yardi has been sued twice for its violations of IRPA. *See* Doc. 24, referencing *Joseph v. Yardi Systems, Inc*., No. 24-cv-11026 (N.D. Ill). Yardi answered the instant Complaint, and repeatedly admitted that the free PropertyShark account allows one free property report and that any additional reports require a subscription, *see* Doc. 9, ¶¶ 8, 25, 26, 29. The undisputed facts demonstrate conclusively that Yardi held out Plaintiffs' identities without their written permission to advertise its PropertyShark website through its free trial, a "textbook" example of an IRPA violation (and hardly the stuff of a manufactured lawsuit). That the PropertyShark website was investigated prior to the filing of the instant lawsuit to determine whether Plaintiffs were in the database is a proper exercise of Rule 11 due diligence. *See Mackey*, 2023 WL

Yardi's "separate product argument," that its "conduct also doesn't violate IRPA because the free trial provides the same product a subscriber receives," is also unpersuasive. Neither of the authorities relied on by Yardi—*Dobrowolski v. Intelius, Inc.*, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018), or *Thompson v. Getty Images (US), Inc.*, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013)—addressed the use of a person's identity to sell ***subscriptions*** to an online platform (as is the case here), but instead involved allegations that their identities were being sold as standalone products. Numerous other courts have made similar findings, essentially cabining *Thompson* and *Dobrowolski* to their respective facts and rendering them outliers on this specific issue. *See, e.g.*, *Mackey*, 2023 WL 2561621, at *10; *Siegel*, 2021 WL 4306148, at *2-3; *Lukis*, 454 F. Supp. 3d at 760-61; *Bonilla I*, 574 F. Supp. 3d at 595; *see also Green*, 2024 WL 168123, at *3 (courts have declined to apply the "separate product" requirement, holding that the use of a plaintiff's identity in connection with a free preview to advertise or promote a monthly subscription service is a "textbook example" of an IRPA violation (collecting cases); *id*. (even if there was a separate product requirement, the free trial and paid subscription are separate products because a free trial user gets a fraction of the content available to a full subscriber, which distinguishes this case from *Dobrowolski* and *Thompson*).[5]

2561621, at *5 n. 8. Nor were Plaintiffs improperly solicited. It was Plaintiffs who first responded to an advertisement and were then contacted. (PSOAF ¶¶21-24). The "misunderstanding of fact" is Yardi's, whose questioning of Plaintiffs was either mistakenly (or strategically) premised on the idea that publicly available information, or free information, somehow operates as an affirmative defense to an IRPA claim, and that Yardi was sued on a claim for invasion of privacy (a personal and nontransferable claim), rather than a violation of IRPA, which protects a property right. Either way, it is irrelevant here, as is the observation that Plaintiffs hired lawyers to prosecute their claim. Finally, Plaintiffs testified that they understand the nature of their IRPA claim against Yardi. (Pls. Resp. DSOF ¶ 35; PSOAF ¶¶ 28-29)

[5] ***Nothing*** in the text of IRPA limits the term "commercial purposes" to situations where a person's identity is used to promote a separate product. As held by the courts in *Green* and *Lukis II*, "[w]here an enactment is clear and unambiguous," a court is "not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations[,] or conditions that the legislature did not express." *Green*, 2024 WL 168123, at *3; *Lukis II*, 542 F. Supp. 3d at 838 (quoting *DeSmet ex rel. Estate of Hays v. Cnty. of Rock Island*, 848 N.E.2d 1030, 1039 (Ill. 2006)). Further, the same district judge that issued *Thompson*

## III. Yardi's challenge to "Plaintiffs' interpretation" of the First Amendment fails.

### A. Yardi's free trial satisfies the constitutional test for commercial speech.

The degree of protection afforded by the First Amendment "depends on whether the activity sought to be regulated constitutes commercial or non-commercial speech." *Bolger v. Young Drug Prod. Corp.*, 463 U.S. 60, 65 (1983). The "core notion" of commercial speech is speech that does "no more than propose a commercial transaction." (*Id.*) The Seventh Circuit has provided additional considerations, which include "whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 517 (7th Cir. 2014). The evidentiary record demonstrates dispositively that each of these considerations are satisfied.

PropertyShark offers a "free account" that allows the free trial user one free property report; any additional property reports require the free trial user to subscribe to PropertyShark. (Pls. Resp. DSOF ¶¶ 5, 6, 9; PSOAF ¶¶ 3, 4). After the user has viewed the one free report, the PropertyShark website advises that "additional reports are just a few clicks away," and then offers an individual report for $4.95, or a monthly subscription for $49.95 (which provides 175 reports, and other additional capabilities), and then expressly invites the user to subscribe—"Buy Monthly Subscription." (PSOAF ¶ 4). The free trial is indisputably a "proposed commercial transaction."

Yardi's assertions that its ***property reports*** do not propose a commercial transaction, are not advertisements, and do not reference a "specific product," *see* Mem. at 9-10, ignore the fact that the ***free trial*** does propose a commercial transaction, is an advertisement, and does reference

later issued *Hoffower v. Seamless ("Hoffower I")*, 2022 WL 17128949, at *2 (N.D. Ill. Nov. 23, 2022), denying a separate product argument on motion to dismiss, stating that even if required, the allegation that subscribers were able to see her information before purchasing a subscription, and her information was displayed as part of a come on to get users to buy in, was sufficient.

a specific product—the PropertyShark website. (*See* PSOAF ¶¶ 3, 4; Pls. Resp. DSOF ¶¶ 5, 6).[6] Yardi's argument misses the point. Plaintiffs' IRPA claims are directed at Yardi's free trial that holds out Plaintiffs' identities without their written consent to advertise PropertyShark, a "textbook example" of an IRPA violation. *See Lukis I*, 454 F. Supp. 3d at 762 (holding defendants' argument that its background reports are "effectively an online encyclopedia about people" "misses the point" as it fails to acknowledge the IRPA claim is directed at the free previews, not the background reports); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 900 (N.D. Cal. 2022) (the suit is not about a free directory or an encyclopedia of knowledge but instead the free teasers that are "indisputably ads that are aimed only at inducing a commercial transaction, and not about meaningful communication of knowledge").

In *Krause v. RocketReach*, 561 F. Supp. 3d 778, 781 N.D. Ill. 2021), the defendant operated a website that allowed visitors to its website to conduct free "people searches." The goal of the preview page was to show the potential customer that the database contains information about the searched-for individual, and to offer a paid subscription service that allows the customer full access to the database. *Id.* Like Yardi here, the defendant argued that its database was merely a "directory" that "does not propose a commercial transaction," and is thus entitled to full First Amendment protection. *Krause*, 561 F. Supp. 3d at 783. The court rejected the argument:

> [P]laintiff's IRPA claim does not challenge her inclusion in defendant's "directory," but rather asserts the defendant's use of her identity without her consent to entice customers to purchase its subscription is prohibited by statute. Her allegations not only describe a "textbook example under the IRPA of using a person's identity for a commercial purpose, ***they also satisfy the constitutional test***

[6] Yardi inadvertently concedes the free trial proposes a "commercial transaction" by arguing that "even if" its "alleged purpose in offering *free* property reports is to entice users to buy subscriptions to PropertyShark," that "doesn't 'propose a commercial transaction," and "even if Yardi has an economic motivation to offer each user a free property report because it hopes that one free report will entice users to sign up for a subscription, that is insufficient to render Yardi's speech commercial." (Mem. at 10-11). These assertions eviscerate Yardi's already unsupportable "commercial transaction" argument.

***for commercial speech.***

*Krause*, 561 F. Supp. 3d at 783 (emphasis added). The court found that where the "preview" offered various plans for purchase, and the user could proceed to the purchase by clicking a further button labeled "SelectPlan," that not only proposed a commercial transaction but allowed users to complete a commercial transaction. *Id*. at 784. The same is true here. (PSOAF ¶ 4).

In *Mackey*, 2023 WL 2561621, at *1, defendant operated Classmates.com, where users could visit for free and search for people and their images. After the user clicked on a photograph, they were prompted (like here) to register for an account. *Id*. at *12. Thereafter, the page generated an advertisement encouraging the user to purchase a Classmates.com subscription. *Id.* The court held the speech was "clearly commercial"—the website advertises its "subscription services," and had an economic motivation in doing so. *Id*., *see also Lukis v. Whitepages, Inc. ("Lukis II"),* 542 F. Supp. 3d 831, 843-44 (N.D. Ill. 2020) ("The free previews, if anything, present a more difficult First Amendment case for Defendants than do the background reports because they 'propose a commercial transaction' and thus fall 'within the core notion of commercial speech.'"). And in *Gaul v. Truth Now, LLC*, 2022 WL 3647257, at *9 (C.D. Ill. Aug. 24, 2022), the court held "the identifying information in the free previews amounted to commercial speech under the First Amendment, as it was used as an advertisement to induce viewers to purchase defendant's subscription services." In so holding, the court rejected defendant's arguments (the same made by Yardi here) that its website was analogous to a free directory, that the free previews were merely a republication of information already in the public domain, and that the mere fact that there was profit to be gained from the republication did not convert the non-commercial speech to commercial speech. *Id*. at *8.

The case authority relied on by Yardi for its directory/publishing non-commercial facts arguments is factually inapplicable. (Mem. at 10-11). Neither *Vrodolyak v. AVVO, Inc.*, 206 F.

Supp. 3d 1384, 1388-89 (N.D. Ill. 2016), *Nieman v. VenusLaw, Inc.*, 512 Fed. App'x 635, 637 (7th Cir. 2013), or *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 957 (9th Cir. 2012), considered whether the use of names and identities used to advertise a subscription service was commercial speech, and the websites were free.[7] Contrary to Yardi's misguided argument (and as discussed *supra* at 16-17), the issue is not about the content of PropertyShark's database or its property reports—it is about Yardi's free trials that are indisputably aimed at inducing a commercial transaction, namely, a subscription to Yardi's PropertyShark website.

In sum, Yardi's PropertyShark platform is not free; it is teased as part of Yardi's advertising strategy along with Plaintiffs' identities, which tie directly to offers for paid subscriptions at the completion of a free trial. (Pls. Resp. DSOF ¶ 9; PSOAF ¶ 4); *see also Krause*, 561 F. Supp. 3d at 784; *Mackey*, 2023 WL 2561621, at *12; *Lukis II*, 542 F. Supp. 3d at 843-44. Plaintiffs' IRPA claim is not dependent on third-party advertisements, and does not challenge that Plaintiffs' identities and related properties are in the PropertyShark database, a fact Yardi concedes. (*See* Mem. at 1). Rather, Plaintiffs sued Yardi under IRPA because Yardi held out Plaintiffs' identities to advertise subscriptions to PropertyShark, as the undisputed facts conclusively demonstrate. These undisputed facts not only describe "a textbook example under the IRPA of using a person's identity for a commercial purpose," they also satisfy the constitutional test for commercial speech. *Krause*, 561 F. Supp. 3d at 783 (quoting, *Lukis I*, 454 F. Supp. 3d at 760).

**B. Plaintiffs' IRPA claims easily satisfy intermediate scrutiny.**

Courts apply intermediate scrutiny in commercial speech cases. *Ezell v. City of Chicago*,

[7] Yardi additionally cites *Health Systems Agency of Northern Virginia v. Virginia State Board of Medicine*, 424 F. Supp. 267 (E.D. Va. 1976). There, the court found that directory information about local physicians was advertising but ruled that a Virginia law forbidding all physician advertising was unnecessarily broad. 424 F. Supp. at 273-74. That decision has no relevance here.

651 F.3d 684, 708 (7th Cir. 2011) (citing *Fox*, 492 U.S. at 477). Courts consider: (1) whether the speech concerns lawful activity and is not misleading; (2) whether the asserted governmental interest is substantial; (3) whether the regulation directly advances the governmental interest asserted; [and] (4) whether it is not more extensive than is necessary to serve that interest." *Pearson v. Edgar*, 153 F.3d 397, 401 (7th Cir. 1998) (citation omitted).

Plaintiffs' IRPA claim easily survive intermediate scrutiny. The asserted government interest in regulating this type of commercial speech through IRPA is substantial because "what is protected by the right of publicity is the very identity or persona of the plaintiff as a human being." *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 908 (7th Cir. 2005) (quoting J. Thomas McCarthy, 2 RTS. OF PUBLICITY AND PRIVACY § 11:52 (2d ed. 2004)). IRPA directly advances this interest by prohibiting unauthorized entities from using an individual's identity for their own commercial gain without prior written consent. 765 ILCS § 1075/30. Finally, IRPA is not more extensive than necessary. In fact, it already incorporates First Amendment protections in the form of exemptions, 765 ILCS § 1075/35(b)(1)-(4), and is no different than other right of publicity statutes that have been held constitutional. *See, e.g. Boshears v. PeopleConnect, Inc.*, 2022 WL 888300, at *11 (W.D. Wash. Mar. 25, 2022) (upholding Indiana's right of publicity statute on a First Amendment challenge); *Gaul*, 2022 WL 3647257, at *9 (rejecting First Amendment challenge, holding "the defendant is free to advertise its subscription services, it may not do so by appropriating Illinoisans' identities without consent." Yardi's First Amendment challenge fails.

## **<u>Conclusion</u>**

As the foregoing discussion makes clear, Yardi's motion for summary judgment fails factually and as a matter of law and should be denied.

Respectfully submitted,
Angela Shephard and Anna Burzawa,

By: /s/ Wallace C. Solberg
Wallace C. Solberg
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
(847) 368-1500
wsolberg@andersonwanca.com
bwanca@andersonwanca.com

*Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/ Wallace C. Solberg